# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

| | |
|---|---|
| **Frantz Viergelia** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No.: 8:16-cv-00798-GLS |
| | ) |
| **Latoya Gafar et al.**, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before this Court, by the parties' consent, are Motions for Summary Judgment and Responses in Opposition thereto. (ECF Nos. 29, 31, 39, 41, 42, 43, 44). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* L.R. 105.6. For the reasons set forth below, both Motions for Summary Judgment are DENIED.

### I.    Background

The following facts are undisputed. On the evening of February 15, 2015, Plaintiff Frantz Viergelia ("Plaintiff") boarded a public metro bus operated by Defendant Washington Metropolitan Transit Authority ("WMATA") on his way home from work. (Viergelia Dep. 8:20–22, 9:1, 15:9–18). The weather that evening was snowy, icy, or a combination of both, causing slick roadways. (*Id.* 17:8–15; ECF No. 39 at 3; ECF No. 41 at 3). As the bus approached University Boulevard and Lorain Avenue around 1:00 in the morning, the bus driver, Mr. Wright, lost control and began skidding downhill. (Wright Dep. 37:13–22, 38:1–2). The bus ultimately collided with Defendant Latoya Gafar ("Gafar")'s sedan, finally coming to a halt in a Safeway parking lot. (Wright Dep. 45:12–21). At the time of the collision, Gafar's sedan was facing the wrong way and straddled two lanes, as Gafar had lost control of her vehicle before the impact. (*Id.* 40:11–14, 44:6–14; Gafar Dep. 16:19–22, 17:1–8). Plaintiff claims that he hit his head on the back of the seat in front of him and hit his left leg on a screw on the back of the seat in front of him. (Viergelia Dep. 21:7–22, 22:1–5). He was later transported to Holy Cross Hospital for treatment. (*Id.* 22:6–9). Since then, Plaintiff has had neck pain, headaches, and nose bleeds that he attributes to the accident. (*Id.* 28:1–4).

Plaintiff filed his Complaint on March 18, 2016, alleging that he suffered injuries as a result of Defendants WMATA and Gafar's negligence. *Id*. Defendants filed their Answers on March 18, 2016 and December 27, 2016, respectively. (ECF Nos. 5, 22). This case was referred to me for All Further Proceedings on November 17, 2017. WMATA filed its Motion for Summary Judgment. (ECF No. 39). Gafar filed her Motion for Summary Judgment. (ECF No.

41). Plaintiff filed his Responses in Opposition thereto. (ECF Nos. 42, 43). WMATA filed its Reply. (ECF No. 44). Defendant Gafar did not file a Reply. Accordingly, the Motions pending before this Court are ripe for disposition.

## II. Standard of Review

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted). The burden can be satisfied through the submission of discovery materials. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). To defeat motions for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 495, 520 (1991) (citing *Anderson*, 477 U.S. at 255)). A mere scintilla of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59 (citing *Seago*, 42 F.R.D. at 632). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

To establish a cause of action for negligence in Maryland, a plaintiff must prove four elements: (1) defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual loss or injury; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *See Todd v. Mass Transit Admin.*, 373 Md. 149, 155 (2003) (internal quotations and citations omitted). Negligence is a relative term and must be decided on the facts of each particular case; ordinarily, it is a question of fact to be determined by the jury. *See Fowler v. Smith*, 240 Md. 240, 246 (1965).[1]

In this case, it is undisputed that the road conditions on the relevant evening were slippery. Under Maryland law, skidding of a vehicle by itself is not evidence of negligence; rather, skidding may be evidence of negligence "if it appears that it was caused by a failure to take reasonable precaution to avoid [skidding] when the conditions at the time made such a result

---

[1] Maryland has held that "meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submission if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury." *Fowler*, 240 Md. at 246 (emphasis in original). Only when reasonable minds cannot differ when faced with the undisputed facts and all favorable inferences drawn in favor of the party trying to prove negligence does the question of negligence become one of law. *Id.* at 247.

probable in the absence of such precaution." *Brumage v. Blubaugh*, 204 Md. 144, 149 (1954) (assessing skidding in light of poor weather conditions) (internal quotation omitted). In addition, "[s]peed may be evidence of negligence where it appears that under the circumstances it was likely to endanger others who were in the exercise of due care." *Id.* Thus, when a jury is presented with evidence of skidding, it may evaluate the "speed of the automobile prior to the skidding and the care in handling it, particularly in the application of the brakes . . . [to determine] whether or not there was an exercise of due care." *York Motor Express Co. v. State*, 74 A.2d 12, 15 (Md. 1950).

### A. WMATA's Motion for Summary Judgment

There is a dispute as to whether WMATA breached its duty of heightened care[2] to Plaintiff through either the manner of operating the bus in wintry conditions or the speed at which the bus was traveling just prior to the accident.

WMATA claims that Mr. Wright was operating the bus "normally under the weather conditions." (ECF No. 39 at 7). But Plaintiff claims that WMATA "failed in having the systems in place to provide guidance to drivers in the foreseeable event of snowy weather" and that Mr. Wright "knew it was dangerous to drive and was negligent in continuing to expose his passengers to the risks of the road that evening" (ECF No. 42 at 4; *see also* Wright Dep. 21–30 (explaining Mr. Wright's attempts to contact WMATA after seeing multiple accidents on the road)). Plaintiff also avers that Mr. Wright's failure to stop and avoid hitting Gafar's vehicle was in itself negligent, because ten seconds passed between the time Gafar's vehicle stopped in front of the bus and the collision, and Mr. Wright simply failed to keep a proper lookout. (ECF No. 42 at 5–6). Plaintiff notes that Gafar's contention that Mr. Wright may have been "following too closely and failed to control [the bus'] speed" is an additional disputed fact. (*Id.*; Gafar Dep. 28:12–16).

WMATA asserts that Plaintiff agrees that Mr. Wright was traveling at a speed appropriate for the conditions. (ECF No. 39 at 7). To the contrary, Plaintiff's deposition testimony is not so clearly developed. (Viergelia Dep. 19:2–8). Mr. Wright testified at his deposition that he was traveling at five to seven miles per hour at the time of the accident. (Wright Dep. 32:17–22, 33–34:1–11). But Plaintiff's response to the question as to whether the bus driver was "going too fast" at the time of the accident is, "[n]o, he wasn't going fast, driving normal. . . . Not slow, normal, yeah. . . . I didn't see him going fast." (Viergelia Dep. 19:2–8). Plaintiff asserts that in his deposition testimony he meant that "the bus continued driving at a normal speed" and not "at a greatly reduced speed given the conditions." (ECF No. 42 at 5). Gafar, too, disagrees with WMATA's assertion that the bus was moving slowly. (Gafar Dep. 28:12–16).

A reasonable jury in this case, construing the facts in the light most favorable to Plaintiff, could conclude that Mr. Wright, the WMATA bus driver, failed to exercise due care under the circumstances. A jury could also conclude that such alleged negligence was a contributing or concurrent cause of Plaintiff's alleged injuries. Accordingly, summary judgment is not appropriate as to WMATA.

---

[2]A common carrier owes its passengers the highest degree of care to provide safe means and methods of transportation for them. *See Todd*, 373 Md. at 157. It is not an insurer of safety, but is bound to deliver passengers to their destination as expeditiously as possible, consistent with safety. *See id.*

### B. Gafar's Motion for Summary Judgment

There is also a dispute as to whether Gafar's speed at the time of the accident breached her duty of reasonable care as a motor vehicle operator. Gafar gave undisputed testimony at her deposition that she was traveling 15 to 20 miles per hour in a 35 mile per hour zone while traveling downhill in slippery conditions. (Gafar Dep. 28:5–11). Plaintiff contends that this speed was a failure "to drive with the appropriate level of caution, resulting in [Gafar's] spinning out and causing this accident." (ECF No. 43 at 2). A reasonable jury could conclude that Gafar was negligent because the speed of her vehicle was excessive in light of the wintry conditions and the slipperiness of the road. *See Brumage,* 204 Md. at 153 (leaving the issue of whether driver traveling 25 to 30 miles an hour on a road with a 50-mile-per-hour speed limit in wintry conditions to a jury).

Both Gafar and Mr. Wright testified at their depositions that Gafar was not moving at the time of the accident. (ECF No. 43 at 2–3; Wright Dep. 59–60; Gafar Dep. 17:3–6, 19:13, 20:14–16). There is a dispute, however, as to whether Gafar was moving just prior to the collision. Gafar asserts that she was not moving and merely looked down at her accelerator, but both WMATA and Plaintiff allege that Gafar was moving the wrong way on the road. (Gafar Dep. 19:20–22, 20:1–3; Wright Dep. 65:4–8; ECF No. 43 at 2–3). Plaintiff contends that such movement makes Gafar *prima facie* negligent in violation of a Maryland traffic statute. (ECF No. 43 at 3).

A reasonable jury, assessing these facts in the light most favorable to Plaintiff, could conclude that Gafar failed to exercise due care under the circumstances. A jury could also conclude that such alleged negligence was a contributing or concurrent cause of Plaintiff's alleged injuries. Summary judgment is therefore not appropriate as to Gafar.

### IV. Conclusion

For the foregoing reasons, Defendant WMATA's Motion for Summary Judgment is **DENIED** (ECF No. 39) and Defendant Gafar's Motion for Summary Judgment is also **DENIED** (ECF No. 41).

Dated: April 30, 2018

/s/
The Honorable Gina L. Simms
United States Magistrate Judge